```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____

RUFINO D. GARCIA, on behalf of
himself and those similarly            Civil No. 15-3685 (NLH/JS)
situated,

          Plaintiff,                            OPINION
     v.

PORTFOLIO RECOVERY ASSOCIATES, LLC,

          Defendant.
_____
```

**APPEARANCES:**

WILLIAMS CUKER BEREZOFSKY, LLC
By:  Christopher Markos, Esq.
     Michael J. Quirk, Esq.
Woodland Falls Corporate Center
210 Lake Drive East, Suite 101
Cherry Hill, New Jersey 08002
          Counsel for Plaintiff

TROUTMAN SANDERS LLP
By:  David N. Anthony, Esq.
     Amanda L. Genovese, Esq.
1001 Haxall Point
Richmond, Virginia 23219
          Counsel for Defendant


**HILLMAN, District Judge:**

     This putative class action suit is brought pursuant to the Fair

Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.[1]

Plaintiff Rufino Garcia alleges that Defendant Portfolio Recovery

Associates, LLC ("PRA"), has a policy, pattern or practice of filing

---

[1] The Court has federal question subject matter jurisdiction
pursuant to 28 U.S.C. § 1331.

collections lawsuits without intent to prove its claims, in violation of §§ 1692e(5), (10), and 1692f.

Before the Court is Garcia's Motion for Class Certification. For the reasons stated herein, the Motion will be denied.

## I.

It appears undisputed that Plaintiff Garcia had an unpaid balance of $6,139.75 on his Citibank Sears credit card. PRA subsequently acquired ownership of the account, and filed suit in New Jersey state court attempting to recover the balance. (Markos Decl. Ex. A) Garcia retained counsel and filed an Answer. (Id. Ex. B) The case proceeded.

Garcia's lawyer served discovery demands, which included a demand for Garcia's credit card application. (Markos Decl. Ex. C) PRA's lawyer, Mr. Murtha, timely produced seven monthly statements, but the cover letter accompanying the documents stated, "I do not have the application." (Id. Ex. D) The cover letter further stated, "[i]f after reviewing the documents you would like to discuss a reasonable settlement please call me." (Id.) Mr. Murtha was asked during his deposition, "Did you do anything to try to acquire the credit agreement between Citibank and Mr. Garcia?"; Murtha answered, "No." (Murtha Dep. p. 25)

PRA admits that on the day set for trial of the case, no one appeared on behalf of PRA, and New Jersey Superior Court Judge Laskin dismissed PRA's suit. Garcia and his lawyer did appear. According to Garcia, "when the case was called up in court, the

judge himself said that Portfolio never shows up, something like that, similar words, that they're just after settlement or something." (Garcia Dep. p. 35)

This lawsuit followed. Garcia asserts that PRA's actions in the state collections suit violated § 1692e(5) which prohibits debt collectors from "threatening to take action that is not intended to be taken." According to Garcia, PRA never intended to prove its claim against him, or even acquire the evidence necessary to prove the claim. Rather, the filing of the collections action was merely an attempt to obtain a default judgment or an early settlement of the case. Garcia further contends that these same actions violate the FDCPA's prohibitions on "using false representations or deceptive means to collect or attempt to collect alleged debts," § 1692e(10), and "using unfair or unconscionable means in connection with the collection of alleged debts," § 1692f.

Moreover, Garcia asserts that PRA took the actions in the underlying suit pursuant to PRA's "Legal Recovery Standard Operating Procedures," (Markos Decl. Ex. O), which he asserts, is a general policy "directing [PRA's] lawyers to explore settlement or abandonment [of the suit] whenever a case is contested and requires a witness." (Reply Brief, p. 4)

The Standard Operating Procedures provides, in relevant part,

> PRA expects Law Firms to make appropriate determination of suit eligibility based on individual account characteristics and state/county level processes and challenges. . . .

3

PRA also expects that all Law Firms will be mindful of cost expenses incurred in the litigation process. Law firm is expected to advance and PRA will reimburse all reasonable costs . . . which include but are not limited to, court filing fees, garnishment and lien fees, and process server fees. Expenses for data source vendors, contract attorney appearances and travel expenses are not reimbursable costs and will be borne by Law Firm.

PRA will audit for and question cost charges such as:
- Multiple filing fees
- Multiple service attempts . . .
- Multiple garnishment attempts . . .
- "Administrative fees" related to the handling of lien/judgment release at any point . . .

. . . .

Please incorporate the following guidelines into any existing process of initiating and completing litigation proceedings on behalf of PRA:

- Portfolio Recovery Associates, LLC must appear as plaintiff name on all pleadings, notice, motions, etc.
. . .
- Continue to make reasonable communication attempts demonstrating efforts to allow debtor to make payments voluntarily . . .
- File for default judgment within a reasonable time frame as allowable by state law

. . . .

Law Firm can close back accounts where scrubs indicate recent counterclaim activity has occurred on other cases by using code [] – Litigation Risk by Consumer

Currently any account that is coded in PRA's LP (Legal Placement) Process . . . as dismissed with or without prejudice is subject to immediate recall by PRA. PRA will then purge the account from their systems thus allowing no further collections on said account. The Law Firm needs to be extremely careful when dismissing accounts. If the Law Firm dismisses the suit in court

but plans to continue working the file, it is imperative to utilize code [ ] (claim withdrawn from court). The reasons for dismissal may be but are not limited to: claim filed in wrong court, debtor has decided on payment plan, wrong debtor sued, etc. . . .

Prior to litigation, all accounts must be approved for suit by an attorney. . . .

. . .

Section 2.c of the Attorney Engagement Agreement requires that notification is given PRA within twenty-four (24) hours of Service Provider's receipt or other actual notice of any claim, counterclaim or special defense affecting PRA's interests – and every matter in which PRA may be required to provide evidence, documentation or a witness.

If the Law Firm receives an answer and/or counterclaim to a collection account (regardless of status the status of the account), the answer must immediately be forwarded to PRA without exception. If the answer involves legal issues regarding the collection of the account, PRA will communicate with the firm as to the course of action and strategy involved with the account.

If the case results in a trial, the law firm is expected to utilize an attorney employee by the firm to prepare and try the case. . . .

. . .

If the answer goes beyond the scope of the general debt collection account, if the issue will potentially establish case law, or if the issue is in any way outside the scope of the collection of the debt, the firm is prohibited to represent PRA without prior consent . . . .

. . .

In the course of litigation, it is not uncommon to require a witness from PRA for a deposition or trial appearance. PRA is prepared to provide trained witnesses either telephonically or in person.

. . .

Law firm is required to contact the witness/custodian of records no later than 14 days prior to the trial date to set up pre-trial meeting/discussion, and any subsequent meetings where necessary prior to the event.

. . .

As soon as request is received, PRA's counterclaims Counterclaims and Trials Team will complete the following:

- Thoroughly review the request for Witness. . . . .
- Contact the Law Firm to discuss [settled in full] opportunities or alternate resolutions, where applicable.

(Marcos Cert. Ex. O)

The proposed class is:

All natural persons against whom Defendant filed a debt-collection lawsuit in a court in the State of New Jersey seeking to collect a consumer debt allegedly owed to Citibank, N.A. from June 2, 2014 through and including June 2, 2015. Excluded from the Class are all such persons other than Plaintiff herein who commenced an action in any court against Defendant alleging a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq., from June 2, 2014 through and including June 2, 2015, or who have signed a general release of claims against Defendant after the collection lawsuit against him or her referenced above was filed.

The proposed subclass is:

All members of the Class as defined above who incurred an out-of-pocket expenditure of money to defend against, respond to, or otherwise resolve the covered collection lawsuit filed against him or her by Defendant.

## II.

Federal Rule of Civil Procedure 23 provides in relevant part,

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> . . .
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule-- that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common

questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.*

### III.

The central, dispositive issues raised by the parties' briefs is whether Garcia's evidence sufficiently establishes the commonality prerequisite to class certification, Fed. R. Civ. P. 23(a)(2), and the predominance prerequisite of 23(b)(3). The Court holds that it does not.

For a proposed class to meet the commonality requirement, class members'

> claims must depend upon a common contention. . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution-- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Dukes*, 564 U.S. at 350.

In this case, the parties agree that the class members' claims depend on a common contention: Garcia contends that PRA did not "inten[d] to prove its debt-collection cases against class members." (Reply Brief, p. 2) The parties disagree, however, as to whether this factual issue is capable of classwide resolution.

Garcia argues that it is capable of classwide resolution because PRA allegedly makes decisions, not based on any evaluation of any given case, but rather pursuant to a blanket policy. Indeed,

8

as set forth above, PRA does have Standard Operating Procedures governing legal recovery of debts. However, the policy does not support the conclusion that PRA does not intend to prove any of the thousands of cases it files in New Jersey state court each year. To the contrary, the policy expressly provides that "PRA expects Law Firms to make appropriate determination [sic] of suit eligibility based on individual account characteristics and state/county level processes and challenges." (Markos Cert. Ex. O, p. 9)(*See also* id. at p. 16, "Prior to litigation, all accounts must be approved for suit by an attorney."). The policy itself suggests that individual account characteristics which could bear on whether PRA files suit, or continues pursuing a suit that has been filed, include: the cost to litigate a particular case, whether precedent-setting issues are involved, and previous litigation with a given debtor. (Markos Cert. Ex. O)

Contrary to Garcia's argument, the other evidence he submits does not support an inference that, in practice, PRA does not actually comply with its written policy. First, the undisputed fact that PRA has agreed to pay Citibank if a Citibank officer or employee must testify does not support an inference that PRA will never provide a witness to testify in its collections suits.

Second, Garcia points to the following evidence concerning PRA's collection suits in New Jersey state court on behalf of Citibank during the proposed class period: of the 2,041 cases "for which dispositions are determinable," (Quirk Decl. ¶ 9), 1,376 of

resulted in default judgments, 592 ended in dismissal orders, 72 are identified by the courts as having been settled, and one was decided on a summary judgment motion by Portfolio that was unopposed. (Id. at ¶ 10)  Zero of cases went to trial. (Id. at ¶ 11)  These proffered dispositions are only marginally probative of any intent on PRA's part, and do not support Garcia's contention that PRA had a uniform intent not to prove all 2,041 cases.

Indeed, the cases resulting in default judgment, which make up approximately 67% percent of the cases in the proposed class, say nothing about PRA's intent to prove, or not prove, those cases. Similarly, the fact that 592 cases "ended in dismissals" means close to nothing when the record does not indicate: (a) whether the dismissals were with or without prejudice; and (b) the reason for dismissal.

Lastly, the undisputed fact that PRA encourages its lawyers to explore and pursue settlement throughout all stages of a suit-- even, perhaps, every suit-- is not at all inconsistent with a simultaneous intent to litigate cases worth litigating based on PRA's individualized assessment.

Thus, the record evidence only supports a conclusion that PRA makes individualized determinations on whether, and how much, to litigate any given case.  In this way, this case is analogous to *Wal-Mart Stores, Inc. v. Dukes*, where the Supreme Court held that the proposed class failed for lack of commonality.  564 U.S. 338 (2011).

In *Dukes*, the proposed nationwide class of female Wal-Mart employees "allege[d] that the discretion exercised by their local supervisors over pay and promotion matters violate[d] Title VII by discriminating against women." 564 U.S. at 342. In that case, "proof of commonality" was dependent on the plaintiffs' "contention that Wal-Mart engages in a *pattern or practice* of discrimination," which required an inquiry into "the reason for a particular employment decision." *Id.* at 352 (italics in original).

The Court held that the plaintiffs failed to establish commonality because they had "not identified a common mode of exercising discretion that pervades the entire company." *Id.* at 356. Indeed, the Court observed, "[t]he only corporate policy that the plaintiffs' evidence convincingly establishes is Wal-Mart's 'policy' of *allowing discretion* by local supervisors over employment matters." *Id.* at 355 (italics in original).

The litigation decisions in this case are analogous to the employment decisions in *Dukes*. Both are individualized and dependent on different people making decisions based on various factors. Thus, as in *Dukes,* the proposed class in this case fails for lack of commonality.

Further, a holding that a proposed class lacks sufficient commonality under Rule 23(a)(2) precludes a holding of predominance under Rule 23(b)(3). *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011)("Parallel with Rule 23(a)(2)'s commonality element, which provides that a proposed class must share a common

11

question of law or fact, Rule 23(b)(3)'s predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members.  Hence, we consider the Rule 23(a) commonality requirement to be incorporated into the more stringent Rule 23(b)(3) predominance requirement.").

Accordingly, Plaintiff's Motion for Class Certification will be denied.

**IV.**

For the reasons stated above, Plaintiff's Motion for Class Certification will be denied.  An appropriate Order accompanies this Opinion.


Dated: August 9, 2017                      __s/ Noel L. Hillman___
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.